IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**KHALFANI M. ATKINSON**

    **Petitioner,**

v.                                               **CIVIL ACTION NO. 1:06cv19**
                                                                  **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On February 7, 2006, the pro se petitioner, Khalfani Atkinson ("Atkinson"), filed a petition pursuant to 28 U.S.C. § 2255 in which he raised four grounds for relief, including ineffective assistance of counsel. Pursuant to Local Rule of Prisoner Litigation 83.15, this Court referred the matter to United States Magistrate Judge John S. Kaull for initial screening and a Report and Recommendation ("R&R").

On June 27, 2008, Magistrate Judge Kaull issued an R&R recommending that claims one, two, and three of Atkinson's petition be denied and dismissed with prejudice. He determined, however, that he would need to conduct an evidentiary hearing to properly evaluate Atkinson's fourth claim of ineffective assistance of counsel.

Following that hearing, Magistrate Judge Kaull issued a second R&R on February 10, 2009 in which he recommended granting Atkinson's § 2255 motion on the ground that he had not received

effective assistance of counsel. The R&R found that Atkinson's attorney, Jason Russo ("Russo"), had affirmatively misrepresented the consequences Atkinson's guilty plea would have on his immigration status, and it recommended the withdrawal of Magistrate Judge Kaull's June 27, 2008 R&R, as well as Atkinson's guilty plea. On February 25, 2009, the Government objected to the R&R, and, on March 27, 2009, the petitioner filed his response to the objections.

Following a de novo review, the Court **ADOPTS** Magistrate Judge Kaull's February 10, 2009 R&R in its entirety, and **GRANTS** the petition on the ground that Atkinson received ineffective assistance of counsel.

### I. Background

Atkinson is a Jamaican citizen who has lived in the United States for twelve years. On June 24, 2003, he pleaded guilty to distribution of crack cocaine, a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and this Court sentenced him to 168 months of incarceration. Upon completion of his federal sentence, Atkinson is subject to deportation pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) due to the fact that his crime is considered an aggravated felony under 8 U.S.C. § 1101(a)(43)(B) because it involved "illicit trafficking in a controlled substance." After

learning that he might be deported, Atkinson filed a notice of appeal on January 7, 2004, which the Fourth Circuit dismissed as untimely on November 10, 2004.

On February 7, 2006, Atkinson filed a petition pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Atkinson's petition rests on four grounds. First, he claims that his guilty plea was unlawfully induced or not made voluntarily or with a full understanding of the consequences because the Court had a duty to inform him of the deportation consequences at his Rule 11 hearing. He further contends that the Government did not disclose all of the material terms or promises of the plea agreement, including a secret agreement not to pursue a leadership role enhancement. Second, he asserts that the drug quantity used to increase his sentence was not determined by a grand jury, and thus its use violates his Due Process rights. Third, he alleges that the prosecutor misled the Court at sentencing by introducing hearsay statements of co-conspirators and perjured testimony in violation of the Due Process Clause. Fourth, he claims that he was not effectively represented by Russo based on Russo's misrepresentation of the law when he informed Atkinson that his guilty plea would not subject him to deportation proceedings, and when he failed to file a timely notice of appeal.

**II. Magistrate Judge Kaull's R&R**

As noted, in his first R&R, Magistrate Judge Kaull recommended that the Court deny Atkinson's first three grounds for relief and scheduled an evidentiary hearing to inquire further into Atkinson's claim of ineffective assistance of counsel. During that evidentiary hearing, Atkinson testified that he had pleaded guilty because Russo had assured him that a guilty plea would not affect his immigration status. Moreover, Atkinson said that his lawyer's advice was a factor in his decision to plead guilty.

Magistrate Judge Kaull's second R&R recommended that the Court grant Atkinson's petition based on ineffective assistance of counsel. Although he did not find that Atkinson's counsel had been ineffective for failing to file a timely appeal, he did conclude that Russo had affirmatively misled Atkinson about the possible deportation consequences that could result from his guilty plea to a drug distribution felony charge.

**III. The Government's Objection to the R&R**

The United States objects to Magistrate Judge Kaull's conclusion that Atkinson sufficiently established that his attorney had affirmatively misled him regarding the legal consequences of his guilty plea. The Government argues that Atkinson should somehow have been required to produce from Russo some corroboration

4

of Atkinson's testimony that he not only had discussed deportation with Atkinson, but also had affirmatively misled him on this matter. The Government further contends that Magistrate Judge Kaull failed to adequately explore Atkinson's motive to testify falsely. In sum, because Russo did not corroborate Atkinson's version of events, and because Atkinson had a motive to lie, the Government argues that Atkinson's testimony alone is insufficient to establish by a preponderance of the evidence that his attorney's performance was constitutionally deficient.

## IV. De Novo Review

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A petitioner who collaterally attacks his conviction under § 2255 bears the burden of establishing his grounds by a preponderance of the evidence. See Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To establish ineffective assistance of counsel, the petitioner must show (1) that his attorney's representation fell below an objective standard of reasonableness, and (2) that counsel's unreasonable errors had a prejudicial effect on the petitioner's defense. Id. at 688, 694.

The two-prong Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). In this particular context, the first prong of the Strickland test is nothing more than a restatement of the general competency standard. Id. The second prong, however, is more specific because, to show prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In considering a petitioner's claim of ineffective assistance of counsel, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 690. However, the Court must

review the reasonableness of counsel's conduct against the particular facts of each case. Id.

**A. Failure to File a Timely Appeal**

It is well-established that a criminal defense attorney who fails to file a notice of appeal at the request of his client deprives his client of his Sixth Amendment right to the effective assistance of counsel. United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). In addition, it does not matter whether the lost appeal had a reasonable probability of success. Id. Under this rule, had Atkinson asked his attorney to file a notice of appeal, Russo's failure to do so would have violated Atkinson's rights under the Sixth Amendment.

In this case, although Atkinson may have been confused about the appellate procedure, the record establishes that he understood he had a right of appeal. At the evidentiary hearing, Atkinson himself testified that he knew an appeal procedure existed, and that Russo had told him he could appeal his sentence if it was wrong or too long. Atkinson, however, never asked his attorney to file an appeal.

Atkinson was emotionally distraught after being sentenced and asked Russo to speak with him following the sentencing hearing. At the evidentiary hearing before Magistrate Judge Kaull, Atkinson

testified that he could not recall exactly what he asked his attorney to do during that meeting. Nevertheless, he argues that Russo should have taken the initiative to outline his available appellate options. These vague verbal exchanges, in which Atkinson did not explicitly ask his attorney to file a notice of appeal, cannot be construed as a request for appeal that would support a finding of ineffective assistance of counsel.

Nor can the discussions Atkinson's aunt had with Russo be construed as a request for appeal. Atkinson's aunt, Angela Williams ("Williams"), discussed post-sentencing options with Russo and understood that Atkinson's participation in a drug rehabilitation program, as well as a boot-camp program, could possibly shorten his sentence. Although Williams apparently, and mistakenly, believed that these programs were part of the appeal process, they are not. Thus, her request that Russo help Atkinson gain entry into these prison programs does not amount to a request for an appeal.

The Court agrees with the R&R's finding that the various conversations Russo had with Atkinson and Williams do not amount to a request for appeal, and finds that Russo's failure to file an appeal was reasonable in light of the circumstances and does not amount to ineffective assistance of counsel.

**B.   Affirmative Misrepresentation of Plea Consequences**

An attorney has no spontaneous duty to inform his client that a guilty plea will lead to deportation. U.S. v. Yearwood, 863 F.2d 6, 8 (4th Cir. 1988).  Thus, standing alone, an attorney's failure to advise his client that a conviction could result in deportation does not constitute ineffective assistance of counsel. Id. at 7-8. An attorney's affirmative misrepresentations to a defendant regarding the consequences of a guilty plea, however, do violate the first prong of Strickland and fall below prevailing professional norms. See U.S. v. Gajendragadkar, 1998 WL 352866, *2 (4th Cir. 1998) (unpublished). See also United States v. Kwan, 407 F.3d 1005, 1015 (9th Cir. 2005)("We agree that where, as here, counsel has not merely failed to inform, but has effectively misled, his client about the immigration consequences of a conviction, counsel's performance is objectively unreasonable under contemporary standards for attorney competence."); United States v. Couto, 311 F.3d 179, 188 (2nd Cir. 2002)("We believe that an affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is today objectively unreasonable. We therefore hold that such a misrepresentation meets the first prong of the Strickland test.").

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Once a court determines that an attorney affirmatively misled a defendant regarding the consequences of a guilty plea, under <u>Strickland</u> it must then determine "'whether a reasonable defendant in [the defendant's] shoes, having asked for, received, and relied upon encouraging advice' about the risks of deportation, 'would have pled guilty anyway had he known' that his attorney was mistaken." <u>Gajendragadkar</u>, 1998 WL 352866 at *2.

A careful review of the record in this case establishes that Russo's conduct fell below an objectively reasonable standard because he affirmatively misinformed Atkinson about the deportation consequences of pleading guilty to a drug distribution felony charge. During his criminal proceedings, Atkinson asked Russo at least twice about the possibility of deportation. First, he asked Russo about deportation at their initial meeting, during which they discussed the plea agreement. Second, he again asked Russo about deportation during the plea hearing itself.

On both occasions, Russo assured Atkinson that a guilty plea would neither affect his immigration status nor lead to deportation. The crime to which Atkinson pled guilty, however, is an aggravated felony for which he is subject to deportation. <u>See</u> 8 U.S.C. §§ 1101(a)(43)(B) and 1227(a)(2)(A)(iii). Thus, because Atkinson twice asked Russo what consequences a guilty plea would

have on his status in this country, and because, on both occasions, Russo assured him that he would not be deported, this Court agrees with the R&R and finds that Russo's conduct fell below an objective standard of reasonableness.

Based on this finding, the Court must next determine whether Atkinson would have pleaded guilty anyway, even knowing that his attorney was mistaken about the legal consequences a guilty plea would have on his immigration status. The Court cannot help but find that the answer to this question clearly is "no."

As reflected in the record, Atkinson was preoccupied with worry over the possibility of deportation. He had lived with his family in the United States for approximately twelve years, and deportation would have shattered the life he had built in America. Importantly, as he testified at the evidentiary hearing, Russo's advice was a factor in his decision to plead guilty. Had he been given accurate information about being subject to deportation should he plead guilty, Atkinson testified that he would have decided differently and rejected the plea agreement in favor of going to trial. Based on such testimony, the Court agrees that there is a reasonable probability Atkinson would not have pleaded guilty had he received accurate advice from Russo about the likelihood of deportation.

**C. Government's Objections**

The Government objects to the conclusion that Atkinson has met his burden of proof in this case, and argues that the Magistrate Judge erroneously shifted the burden of proof to the Government, minimized Russo's absence, failed to inquire into why Atkinson failed either to produce Russo or submit an affidavit from him, and failed to examine Atkinson's motive to testify falsely.

The focus of the Court's inquiry, however, is not on what Russo's testimony might have been, but on "'whether a reasonable defendant in [Atkinson's] shoes, having asked for, received, and relied upon encouraging advice' about the risks of deportation, 'would have pled guilty anyway had he known' that his attorney was mistaken." Gajendragadkar, 1998 WL 352866 at *2. As the R&R clearly recognizes, it is the Court's province to judge the credibility of a witness and to determine whether testimony is sufficient to meet the burden of proof. In this case, the Magistrate Judge found that Atkinson's testimony was credible and that he had met his burden of proof.

While the Government does not argue that Atkinson had to produce Russo to testify at the hearing, or to submit an affidavit from him in support of Atkinson's testimony, it relies on United States v. Polizzi, 926 F.2d 1311, 1221-22 (2nd Cir. 1991), to argue

that the Court should draw a negative inference against Atkinson for failing to question witnesses regarding disputed facts.[1] Here, however, no such inference is warranted. Atkinson swore under oath to tell the truth and testified to his own motives in deciding to plead guilty, and the Court finds his testimony credible.

In light of all these facts, after conducting a de novo review, the Court agrees with Magistrate Judge Kaull's recommendation and finds that Russo affirmatively misled Atkinson about the legal consequences of his guilty plea, and that Atkinson received ineffective assistance of counsel as a result. Atkinson testified credibly that, had he known a guilty plea would lead to his deportation, he would not have pleaded guilty but, instead,

---

[1] The Government also relies on United States v. Santelises, 476 F.2d 787, 790 n.3 (2nd Cir. 1973), to argue that Atkinson's failure to corroborate his allegations by submitting an affidavit from his counsel "independently justifies" rejecting his claim. The Government's reliance is misplaced because in Santelises, the petitioner merely claimed that he was unaware of the possibility of deportation because the Court failed to warn him, not that he had been affirmatively misled by his attorney. Id. at 790. See also United States v. Santelises, 509 F.2d 703, 704 (2nd Cir. 1975)(per curiam)(noting in a subsequent petition by the same petitioner that his submission of an affidavit from his attorney failed to state a claim for ineffective assistance of counsel because it did not aver that the attorney had made an affirmative misrepresentation). The instant case is easily distinguished from Santelises because Atkinson testified not that the Court had a duty to warn him of possible deportation, but that his attorney affirmatively misled him.

would have put the Government to its burden of proof at trial. Thus, his Sixth Amendment right to effective assistance of counsel has been violated based on his showing that (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result. <u>Strickland</u>, 466 U.S. at 688, 694.

## V. Conclusion

For the foregoing reasons, the Court **ADOPTS** Magistrate Judge Kaull's February 10, 2009 R&R in its entirety, **GRANTS** Atkinson's §2255 petition on the basis of ineffective assistance of counsel, **WITHDRAWS** Atkinson's guilty plea, and **DIRECTS** the Clerk to close this case and strike it from the Court's docket.

It is so **ORDERED.**

The Court also **DIRECTS** the Clerk to transmit copies of this Order to the <u>pro se</u> petitioner via certified mail, return receipt requested, and all appropriate agencies.

Dated: March 31, 2009

<u>/s/ Irene M. Keeley</u>
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE